UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TERRY MCCLODDEN, | ) | Civil Action No.: 4:23-cv-00585-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| -vs- | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

  This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

### I.  RELEVANT BACKGROUND

**A.  Procedural History**

  Plaintiff filed an application for DIB in December 2012, alleging disability beginning in August 2008. Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in June 2016 at which time Plaintiff and a vocational expert (VE) testified. (Tr. 29). The Administrative Law Judge (ALJ) issued an unfavorable decision on August 18, 2016, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 23). Plaintiff filed a request for review of the ALJ's decision. The Appeals Council denied the request

for review. (Tr. 1-4).  In September 2017, Plaintiff filed an action in this court. No. 4:17-cv-2600-TMC. Defendant's Motion to remand was granted in June 2018. Another hearing was held in January 2019. (Tr. 2419). The ALJ issued an unfavorable decision on March 15, 2019, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 2433). In December 2022, the Appeals Council addressed Plaintiff's written exceptions. (Tr. 2401-2403). In February 2023, Plaintiff filed the instant action. (ECF No. 1).

**B.      Plaintiff's Background and Medical History**

Plaintiff was born in 1960, and was forty-eight years old on the alleged onset date. (Tr. 2431). Plaintiff had past relevant work as customer service representative, front desk clerk, and night auditor. (Tr. 2431). Plaintiff alleges disability originally due to depression, Parkinson's disease, chronic back pain, back injury, and arthritis. (Tr. 78).  Relevant records will be addressed under the pertinent issue headings.

**C.      The ALJ's Decision**

In the decision of March 15, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 2433):

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012 (Exhibit 10D).

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 25, 2008 through her date last insured of December 31, 2012 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: spine disorder, dysfunction of the shoulder, Parkinson's disease, obesity, and affective disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one

2

|     | |
| --- | --- |
|     | of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). |
| 5.  | After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant could have never climbed ladders, ropes, scaffolds, ramps, or stairs; the claimant could have frequently balanced with a hand-held assistive device, used to get to and from the work station; the claimant could have occasionally stooped and crouched, but never have kneeled or crawled; the claimant could have occasionally reached overhead with the left upper extremity; the claimant could have frequently performed handling and fingering with the left hand; the claimant could have no use of moving machinery or exposure to unprotected heights; and the claimant was limited to simple, routine, and repetitive tasks performed for two-hour blocks of time with normal rest breaks during an eight-hour work day. |
| 6.  | Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). |
| 7.  | The claimant was born on May 22, 1960 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged onset date. The claimant subsequently changed age category to closely approaching advanced age and remained in that age category through the date last insured (20 CFR 404.1563). |
| 8.  | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). |
| 9.  | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 10. | Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). |
| 11. | The claimant was not under a disability, as defined in the Social Security Act, at any time from August 25, 2008, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(g)). |

## II. DISCUSSION

Plaintiff argues the ALJ erred in formulating the RFC as to Plaintiff's use of a walker/cane/scooter and tremors. (ECF No. 13 at 14-16). Plaintiff generally argues the ALJ did not perform a function by function assessment in the RFC. (ECF No. 13 at 16-17). Plaintiff argues the ALJ erred in weighing the opinions of Dr. Harkness and Dr. Neboschick, the nonexamining state agency consultants. (ECF No. 13 at 10-13). Defendant argues the ALJ applied the correct law and relied on substantial evidence in finding Plaintiff not disabled.

### A.    LEGAL FRAMEWORK

#### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included

in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d

at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**RFC: cane/walker/scooter, tremors**

Plaintiff argues the ALJ erred in formulating the RFC as to Plaintiff's use of a walker/cane/scooter and tremors. (ECF No. 13 at 14-16). Plaintiff generally alleges the ALJ did not perform a function by function assessment. (ECF No. 13 at 16-17).

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir.

7

2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

> Pertinent to issues raised by Plaintiff under this heading, the ALJ found an RFC of:
>
> light work as defined in 20 CFR 404.1567(b) except that the claimant could have never climbed ladders, ropes, scaffolds, ramps, or stairs; the claimant could have frequently balanced with a hand-held assistive device, used to get to and from the work station; the claimant could have occasionally stooped and crouched, but never have kneeled or crawled; the claimant could have occasionally reached overhead with the left upper extremity; the claimant could have frequently performed handling and fingering with the left hand...

(Tr. 2424). Plaintiff argues her Parkinson's required the use of a walker and caused hand tremors. (ECF No. 13 at 14). Plaintiff block quoted the ALJ's narrative discussion only as to Parkinson's. (ECF No. 13 at 14-15). Plaintiff extensively relies on her own testimony that she uses a walker. (ECF No. 13 at 15). Plaintiff argues the ALJ did not explain how Plaintiff could perform the RFC "all while manipulating a walker" and alleges the ALJ cherry-picked the voluminous record. (ECF No. 13 at 15).

The ALJ gave two specific uses in the RFC for a hand-held assistive device, which would be a cane, not a walker[3]: 1) to balance six hours of the work day and 2) to use to get to and from the work station. The ALJ gave no restrictions to the right hand or right upper extremity. The ALJ gave six hours handling/fingering with left and less than 6 hours reaching overhead with the left. (Tr. 2424).

---

[3] The ALJ earlier in the opinion found that although Plaintiff used an assistive device at times, one was not required that would necessitate the use of both of her upper extremities, "such as crutches, a walker, or two canes." (Tr. 2422-2423). Records also supportive of the ALJ's finding are discussed further below.

The ALJ specifically acknowledged Plaintiff's testimony that she began using a cane in 1992, a walker in 2008-2009, and then a scooter. (Tr. 2425). Plaintiff reported she could stand 10 minutes. Plaintiff testified her left hand moved independent of her intent. (Tr. 2425). Not at issue here,[4] the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of symptoms not entirely consistent with the evidence of record. (Tr. 2425). The ALJ then discussed the evidence regarding each impairment.

As to Plaintiff's back and gait, the ALJ noted multiple diagnostic imaging results that showed only mild or minimal findings and exams of reduced range of motion and tenderness to palpation with negative straight leg testing, no atrophy, and full strength with normal gait. The ALJ cited the following exhibits in support, summarized below chronologically: Exhibits 2F/156, 2F/187, 2F/314, 2F/414, 2F/500, 2F/559, 2F/600, 2F/759, 2F/899, 2F/991, 2F/1003-1004, 2F/1055, and 2F/1258. (Tr. 2426).

Exhibit 2F/1258 is a September 2008 physical medicine rehab consult, where Plaintiff examined with nonantalgic gait without assistive device. (Tr. 1549).

Exhibit 2F/1055 is an August 2009 ER visit for back pain with no notation of gait or assistive device use. Exhibit 2F/1003-1004 is November 2009 notes from neurologist Dr. Waller, noting exam of "Gait: normal. Tandem gait: good" and with notes of minimal tremor on the left with grip only, and good finger nose finger with minimal action and terminal tremor at first, but when asked to go faster, tremor disappeared. (Tr. 1294-1295). Impression was "minimal postural and action tremor

---

[4] In Plaintiff's brief, Plaintiff put nonexamining mental opinions and the RFC at issue. The Fourth Circuit Court of Appeals has made clear that an RFC determination "is a separate and distinct inquiry from a symptom evaluation." *Dowling v. Comm'r*, 986 F.3d 377, 387 (4th Cir. 2021).

on examination today. This tremor essentially only bothers her when she types, by her history." (Tr. 1295). Exhibit 2F/991 is a December 2009 chronic pain consult with Dr. Glauser stating "ambulation-does not require any assistive devices" and "other assistive devices-none." (Tr. 1282). Gait was nonantalgic.

Exhibit 2F/899 is a May 2010 orthopedic surgery consult where there was no notation of assistive device use or gait. (Tr. 1190). Exhibit 2F/759 is a November 2010 physical medicine rehab consult, where Plaintiff examined with full strength, no atrophy, and no tremors seen. "Gait and station as well as tandem gait are normal." (Tr. 1050).

Exhibit 2F/559 is a April 2011 physical medicine rehab note with no notation regarding gait or assistive device. (Tr. 850). Exhibit 2F/600 is an April 2011 physical therapy discharge note where Plaintiff reported the absence of left shoulder pain at the start of the session; there was no notation regarding any gait problems or assistive device use. (Tr. 851).

Exhibit 2F/500 is a September 2012 ER visit complaining of back pain. Plaintiff had a steady gait. (Tr. 791). Exhibit 2F/314 is a December 2012 visit where Plaintiff had increased pain after a minor car accident and examined with "gait slightly slow and antalgic, steady." There is no assistive device use indicated. (Tr. 605).

Exhibit 2F/414 is a May 2013 ER visit complaining of bending over to pick up something and having acute onset back pain. Exam had no notation regarding gait or assistive device use. (Tr. 705). Exhibit 2F/156 is a June 2013 visit with exam of gait steady without cane, no tic, "same extremity tremor," and no gross deficit. (Tr. 447). Exhibit 2F/187 is a June 2013 ER visit with three days of arm pain with full strength and no notation of abnormal gait. (Tr. 478).

While there are some exams of abnormal gaits, some notations of cane usage,[5] and a possible cane prescription,[6] the ALJ did not ignore the record. The ALJ, crediting in part the very intermittent notations of assistive device use in the record, provided Plaintiff an RFC that included assistive device usage that was supported by the record. Plaintiff's reply brief appears to assert that Plaintiff could not perform the RFC "all while manipulating a walker." (ECF No. 19 at 9). There does not appear to be any contemporaneous exams of walker use in the 2,986 page record. The Appeals Council had directly addressed Plaintiff's walker argument previously and also noted the record documented cane use, not walker use. (Tr. 2402).

The ALJ noted that despite Plaintiff's testimony to device use during the entire relevant period, Plaintiff was "noted to use no such device multiple times within the record, though it was recommended, as needed, by August 2011," citing Exhibits 2F/417 and 2F/506. (Tr. 2426)(in reference to cane, not walker).

As to Plaintiff's emphasis on the ALJ's Parkinson narrative explanation, the ALJ did consider tremors as related to gait:

Moreover, physical examinations performed from 2009 through 2013 showed only

---

[5] Plaintiff provided no record citations to exams of gait issues or walker usage in the voluminous record in either the initial or reply brief, but Plaintiff generally asserts the ALJ cherry-picked the record. The court considered the large record before the ALJ and notes Plaintiff ambulated well with a cane in June 2012 and stated in May 2012 she used the cane because of a left foot callus (Tr. 677, 697), and Plaintiff had antalgic gait with cane in September 2011.( Tr. 762). In August 2011, Dr. Smuckler stated as plan "continue cane as needed for steady gait" (Tr. 797). The ALJ considered Dr. Smuckler's note. (Tr. 2426).  In May 2010, psychology noted Plaintiff reported "she has a cane that she uses for stretching exercises and for assistance on really bad days." (Tr. 1197).

[6] This was a check box form completed by a kinesiotherapist in February 2011 and it is unclear who originally prescribed a cane, but Plaintiff demonstrated usage of the equipment with an independent and safe gait. (Tr. 911-912)

> a "little" slowing to her gait, and mild slowing on chair rising, with noted tremors and finger taps, and some very mild cogwheeling noted at the elbow. Furthermore, there were only intermittent notations of assistive device use to prevent falling. At other times, the claimant had a normal, unassisted gait. However, the claimant typically had intact sensation, no atrophy, full muscle strength, full deep tendon reflexes, normal heel to shin testing, and good bilateral rapid alternating movements to the hands (Exhibit 1F/26, 31; Exhibit 2F/156, 221, 314, 471, 486, 500, 991, 1066, 1258; Exhibit 3F/18). The claimant was prescribed medication including Primidone and Carbidopa to try and control her tremors (Exhibit 1F/20). She further denied falls on the record (Exhibit 2F/374).

(Tr. 2427). In Plaintiff's RFC argument, Plaintiff principally cites her own testimony, asserts the ALJ did not reconcile gaits and falls, and does not provide any citation to a plethora of abnormal gaits/walker usage in the record or supported, consistent doctors' opinions within the regulatory requirements regarding assistive device usage.[7] The ALJ here considered the record and formulated an assistive device RFC, which included the when and how of usage, considering the particular facts of the case in alignment with SSR 96-9p considerations.

Here, the ALJ discussed the evidentiary basis for the RFC at length. The ALJ went through Plaintiff's records with citation to exams of both normal and abnormal exam findings, Plaintiff's allegations, and objective imaging findings. (Tr. 2424-2427). The ALJ provided discussion supported by the record sufficient for this court to meaningfully review the ALJ's conclusions regarding the RFC. The Court cannot say that a reasonable mind would not reach this RFC in view

---

[7] To find that a hand-held assistive device is <u>medically required</u>, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded. SSR96-9p at *7(as applicable to an RFC for less than a full range of sedentary work, but viewed by courts as lending guidance as to other exertions).

of the totality of the evidence. The ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. Even where there is evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). The court does not reweigh the evidence. *See Johnson v. Saul*, No. 5:20-cv-47-KDW, 2021 WL 717250, at *10 (D.S.C. Feb. 24, 2021)("Even if the evidence highlighted by Plaintiff could support a different result, the court's role is not to second-guess the ALJ's findings.") Based upon the foregoing, substantial evidence supports the ALJ's RFC.

As to Plaintiffs arguments regarding a proper function by function analysis, the ALJ's RFC and RFC narrative is supported by substantial evidence as displayed above. (ECF No. 13 at 16-17). The RFC discussion by the ALJ permitted meaningful review.[8]

**Non-examining Mental Opinions**

Plaintiff argues the ALJ erred in weighing the opinions of Dr. Harkness and Dr. Neboschick, nonexamining state agency mental consultants. (ECF No. 13 at 10-13).

The Social Security Administration's regulations provide that "[r]egardless of its source, we

---

[8] Remand may be appropriate when there is no function by function analysis, but remand is only appropriate when meaningful review is frustrated and the court is "unable to fathom the rationale in relation to evidence in the record." *See Mascio*, 780 F.3d at 636 (*citing Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Such is not the case here on either account. *See e.g. Ladda v. Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. Oct. 18, 2018)and *Wilbanks v. Berryhill*, No. 1:17-cv-1069-JMC-SVH, 2018 WL 4941121, at *10 (D.S.C. Feb. 7, 2018), *report and recommendation adopted sub nom.*, 2018 WL 4476118 (D.S.C. Sept. 19, 2018).

will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c).[9] Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. *See* 20 C.F.R. § 404.1527(c). The medical opinion of a treating physician is entitled to controlling weight, i.e., it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585,590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ applies the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. *See* SSR 96-2p; *Hines v. Barnhart*, 453 Fd 559,563 (4th Cir. 2006). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*,

---

[9] The applicable law in this action based on Plaintiff's application date is the regulations pre-March 2017.

76 F.3d at 595.

In May 2014, Dr. Harkness, Ph.D., a nonexamining state agency mental consultant, opined in the narrative that based on the available VA records at that time, Plaintiff began getting treated exclusively for physical complaints in 2012, and giving Plaintiff some benefit of the doubt, she had a severe mental impairment at the DLI that allowed for the ability to carry out "at least simple, unskilled tasks." (Tr. 84). The opinions of "understand and remember short and simple instructions" and "carry out very short and simple instructions" were under a different explanation heading. (Tr. 89). Dr. Neboschick adopted Dr. Harkness's opinions and in July 2014 noted there was no additional medical evidence during the intervening time. (Tr. 99, 104). The opinion as to "tasks" was "able to attend to and perform simple tasks without special supervision for at least two hour periods." (Tr. 104).

The ALJ gave little weight to these nonexamining opinions. The ALJ loosely summarized the opinions as "could engage in very short and simple instructions and tasks." The ALJ did not differentiate between "understand/remember" and "carry out" or "instructions" and "tasks." The opinions were only "very short" as to carry out, not as to understand/remember. The opinions as to "very short" were only as to instructions, not as to tasks. (Tr. 2428). The ALJ's summarization of the opinions was not the exact specificity of the actual opinions, but the ALJ clearly considered the specific exhibits in the record. The ALJ did not expressly mention the two hour opinion but partially included it in the RFC itself. (Tr. 2428).

In assigning little weight, the ALJ did note that the consultants did not have a full record and did not examine Plaintiff. (Tr. 2428). The ALJ addressed the supportability and consistency factors noting the record as a whole— with findings of "generally cooperative, pleasant behavior, intact

15

concentration, attention, and memory" and "with a euthymic mood, full range affect, and intact judgment and insight with admitted improvement during treatment and with medication management,"— was inconsistent with the opinions. (Tr. 2428). The ALJ noted there were some supported limitations due to Plaintiff's symptoms, but the degree opined by the nonexaminers was inconsistent with the record. (Tr. 2428). The ALJ had previously noted findings of constricted affect, limited attention, and anxious mood at times and findings of attentive and good motivation with multiple citations to the record. (Tr. 2427).[10] When the ALJ previously found Plaintiff had moderate limitations in concentration, persistence, and pace, the ALJ noted despite allegations of difficulty concentrating and some exams of deficits in that area, Plaintiff remained able to perform simple tasks like shopping, preparing simple meals, doing laundry, using public transportation, and taking college courses. (Tr. 2424). The ALJ gave an RFC of "simple, routine, repetitive tasks" and used part of the nonexamining opinions as to simple tasks and two hour blocks of time. (Tr. 2424). After the remand and Appeals Council order, the ALJ was specifically concerned about the RFC and the GED reasoning levels and asked the VE about this concern. The VE testified the hypothetical person under the RFC of simple, routine, and repetitive tasks for two hour blocks of time could perform the opined GED reasoning level two jobs. (Tr. 2432).

It is evident in accordance with *Dowling v. Comm'r*, 986 F.3d 377 (4th Cir. 2021), the ALJ considered all the regulatory factors in weighing these nonexamining opinions. The deference to the treating physician rule does not apply to these two doctors as they are nonexamining consultants. The

---

[10] In August 2008, Plaintiff had fair attention and concentration. (Tr. 1613). In November 2010, Plaintiff had good attention/concentration and memory and "presents as depressed but displays intact cognitive functioning." (Tr. 1071-1072). In January 2011 and November 2010, Plaintiff had alert attention and seemed motivated. (Tr. 935, 1066). In March 2011, Plaintiff had a C&P mental disorders exam with constricted affect and anxious tense mood, rambling thought process, and short attention span. (Tr. 437).

nonexamining factor and lack of/frequency of treatment factor also weigh against the opinions here. Considering the ALJ's decision and the records relied on by the ALJ, the ALJ properly considered all of the factors for weighing an opinion in 20 C.F.R. § 404.1527(c). The ALJ's discussion addresses the factors of the supportability and consistency of the source's opinion with respect to all of the evidence of record. Plaintiff quotes analysis from the subjective symptom evaluation of *Cannon v. Comm'r*, 61 F.4th 341 (4th Cir. 2023) for the proposition that the ALJ "erred in requiring objective evidence to support the limitations" opined by nonexaminers. (ECF No. 13 at 12-13). However, by regulation, the ALJ is required to consider the supportability and consistency of the source's opinion with respect to all of the evidence of record, which includes a volume of objective evidence; this is what the ALJ did in Plaintiff's case. The *Cannon* case itself addressed multiple issues and was also in regard to a treating specialist's opinions and the importance of analyzing all the factors. *Cannon v. Comm'r*, 61 F.4th 341 (4th Cir. 2023). In *Cannon*, the Fourth Circuit specifically discussed the evidence of the treating specialist's extent of exams, testing, and treatment. *Id.* at 355. Here, the opinions at issue are from nonexaminers, not a treating specialist like in *Cannon*. The ALJ complied with the applicable regulations, making clear to a subsequent reviewer the reasons for the findings made as to the weight given as to the non examining mental consultants' opinions. The ALJ's decision was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The standard of review here is not whether conflicting evidence might have resulted in a contrary decision, but it is whether substantial evidence supports the ALJ's decision. A district court will not disturb an ALJ's determination as to the weight assigned to a medical opinion, including a treating physician's opinion, "absent some indication that the ALJ has dredged

17

up 'specious inconsistencies' ... or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted). The ALJ's findings are supported by substantial evidence and he conducted a proper analysis in accordance with the applicable, law, regulations, and policies.

### III.  CONCLUSION

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

February 5, 2024
Florence, South Carolina

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge